**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| SUSAN BISHOP, Individually and as Personal Representative of the Estate of JOHN F. COULS, Decedent, | Case No.  3:18-cv-186-GMG Judge: Gina Groh |
| Plaintiffs, | |
| v. | |
| TRIUMPH MOTORCYCLES (AMERICA) LIMITED, et al., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANTS,
TRIUMPH MOTORCYCLES, LIMITED, TRIUMPH MOTORCYCLES (AMERICA),
LIMITED, AND FREDERICKTOWN YAMAHA TO STRIKE CERTAIN OF
PLAINTIFFS' SUMMARY JUDGMENT EVIDENCE AND RESPONSES TO
DEFENDANTS' STATEMENTS OF UNDISPUTED MATERIAL FACTS**

Defendants Triumph Motorcycles Limited ("TML"), Triumph Motorcycles (America)

Limited ("TMA"), and Fredericktown Yamaha ("Fredericktown" or the "Dealer") (collectively,

"Defendants"), submit this memorandum of law in support of their motion to strike certain of the

evidence offered by Plaintiffs in support of their Opposition to Defendants' Motion for Summary

Judgment and to strike certain of Plaintiffs' responses to the Statement of Undisputed Material

Facts In Support of Motion of Defendants Triumph Motorcycles Limited, Triumph Motorcycles

(America) Limited, and Fredericktown Yamaha for Summary Judgment Pursuant to Fed. R. Civ.

P. 56 ("Defendants' SUMF").

## I.     SUMMARY OF DEFENDANTS' ARGUMENT

In opposing Defendants' Motion for Summary Judgment (ECF No. 135),[1] Plaintiffs offer little to no evidence admissible for the purpose of establishing genuine issues of material fact on the essential elements of defect and causation on their products liability claims.

In particular, Plaintiffs and their liability expert, Byron Bloch[2], rely almost entirely on evidence of subsequent remedial measures conducted by TML after Mr. Couls' accident on November 19, 2016, evidence that is undeniably inadmissible under Rule 407 of the Federal Rules of Evidence to prove "culpable conduct; a defect in a product or its design; or a need for a warning or instruction." This evidence includes the January 9, 2017 Triumph Recall Committee meeting notes, Safety Action Recall Notice Service Bulletin 546 ("SB546") and related National Highway Traffic Safety Administration ("NHTSA") reporting materials and customer notices, and documents memorializing TML's testing of different rubber handgrips and the tolerances on the handlebars of the 2016 Triumph Bonneville T120 model.

Plaintiffs additionally offer evidence of other incidents without satisfying their heavy burden of establishing that those claims are substantially similar, which is necessary in order to be offered as admissible evidence of defect or liability. This evidence is also, in part, inadmissible as hearsay and lacking foundation. Plaintiffs further mischaracterize this evidence, providing an

---

[1] Plaintiffs likewise rely on inadmissible evidence in support of their Motion for Partial Summary Judgment. Defendants' opposition to Plaintiffs' Motion for Partial Summary Judgment addresses the inadmissibility of this evidence. Given the overlapping deficient evidence that Plaintiffs offer in their summary judgment briefing, the grounds presented herein and in Defendants' opposition to Plaintiffs' Motion for Partial Summary Judgment warrant the striking of this evidence in Plaintiffs' Motion for Partial Summary Judgment.

[2] Defendants contend that Byron Bloch and his anticipated opinions are unreliable and should be precluded at trial. Defendants made those arguments in their summary judgment papers and may be considered by the Court in ruling on a summary judgment motion. *See, e.g., Cortes-Irizarry v. Corporacion Insular*, 111 F.3d 184 (1st Cir. 1997); Fed. R. Evid. 702, Committee Notes on Rules – 2000 Amendment.  Nonetheless, Defendants further refer the Court to Defendants' contemporaneously filed Motion to Exclude Byron Bloch, filed pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert*.

immaterial and patently misleading timeline as to when Triumph became aware of a stiction issue related to heated handgrips and began its investigation that led to SB546.

Furthermore, Plaintiffs impermissibly rely on a Consent Order issued by NHTSA on August 28, 2015, almost fifteen months before Couls' November 19, 2016 accident and months before the first 2016 Triumph Bonneville T120 was assembled and sold. This Consent Order, which related to alleged deficiencies in Triumph's reporting and investigation of an alleged defect concerning the 2012-2013 Triumph Street Triple R motorcycles, is entirely immaterial to any issue in this lawsuit, including the specific elements of defect and causation as well as Plaintiffs' baseless assertion for punitive damages. The only "value" of the Consent Order is to confuse the Court and unfairly prejudice Defendants. In other words, the Consent Order has no probative value to any issue in this matter.

Lastly, several of Plaintiffs' responses to Defendants' SUMF should be stricken as not supported by admissible evidence or legally cognizable objections.

## II.      ARGUMENT AND AUTHORITIES

### A.    Legal Standard

Rule 56 provides that a party may support its motion for summary judgment by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce *admissible* evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B) (emphasis added). Likewise, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

Thus, "[w]hile a party may support its position on summary judgment by citing to almost any material in the record, the party's reliance on that material may be defeated if 'the material cited to support or dispute a fact cannot be presented in a form that would be admissible in

evidence.'" *Cantrell v. Rubenstein*, 2016 U.S. Dist. LEXIS 134737, at *23 (S.D.W. Va. Aug. 23, 2016) (quoting *Whittaker v. Morgan State Univ.*, 524 Fed. Appx. 58, 60 (4th Cir. 2013)). "When a party's evidentiary support is challenged on the grounds of admissibility, the party bears the burden of 'either authenticat[ing] the documents or propos[ing] a method to do so at trial.'" *Id.* at *24.

## B.   Plaintiffs' Subsequent Remedial Measure Evidence Is Inadmissible To Prove Defect

In opposing Defendants' Motion for Summary Judgment, Plaintiffs claim that they will be able to produce "direct" evidence of the existence of a defect in the subject motorcycle at trial.[3] Opposition at 14-19. This purported direct evidence almost entirely encompasses documentation and testimony regarding subsequent remedial measures taken by Defendants after the November 19, 2016 accident, including the following:

- TML's Minutes of its Recall Committee Meeting on January 9, 2017 (Plaintiffs' Opp. Exhibit 2);

- "TML's Report 204 – Heated Grip Thermal Expansion," dated January 17, 2017 (Plaintiffs' Opp. Exhibit 7);

- Deposition testimony of TML corporate representative[4], Adrian Shaw, regarding TML's post-accident recall investigation, including "TML's Report 204 – Heated Grip Thermal expansion" and other post-accident testing (Plaintiffs' Opp. Exhibit 8); and

---

[3] Plaintiffs contend that Triumph's warning in the Owner's Handbook that "[u]se of the motorcycle with a sticking or damaged throttle control will interfere with the throttle function resulting in loss of motorcycle control and an accident" is direct evidence of defect here. Opposition at 5, 18; Plaintiffs' Exhibit 5. Defendants object to the introduction of this statement for that purpose as not probative as to whether Mr. Couls' motorcycle was defective or that defect caused Mr. Couls' accident. It is, at most, probative of Defendants' general knowledge of the dangers associated with a sticking or damaged throttle control, the adequacy of Defendants' pre-accident warnings, and whether a sticking or damaged throttle control is generally an unreasonably dangerous condition.

[4] Even if Mr. Shaw's testimony was admissible in its entirety as to defect, the excerpts offered by Plaintiffs of the deposition undermine Plaintiffs' theory of the case and the opinions of Mr. Bloch, particularly his

- SB546, issued on January 25, 2017, and subsequent recall-related notices and NHTSA

  communications (Plaintiffs' Opp. Exhibits 1, 9 (Plaintiffs' "recall notice")).

See Opposition at 14-19 (providing numbered list of "direct" evidence of defect).

Rule 407 of the Federal Rules of Evidence provides that evidence of subsequent remedial measures is inadmissible to prove "culpable conduct; a defect in a product or its design; or a need for a warning or instruction." Federal courts have therefore repeatedly precluded the introduction at trial of subsequent remedial measure evidence, such as post-incident recalls and recall investigations, for the purpose of proving defect and failure to warn in products liability matters or otherwise establishing the liability of Defendants. *See*, *e.g.*, *Landis v. Jarden Corp.,* 5 F. Supp. 3d 808, 815-816 (N.D.W. Va. 2014); *Adams v. Boston Sci. Corp,* 2016 U.S. Dist. LEXIS 65954, *5 (S.D.W. Va. May 16, 2016); *Eghnayem v. Boston Sci. Corp.*, 2014 U.S. Dist. LEXIS 153284, *14-15 (S.D.W. Va. Oct. 28, 2014) (noting that subsequent remedial measures evidence would be inadmissible at trial for the purpose of proving defect and liability); *Werner v. Upjohn, Inc.*, 628 F.2d 848, 856-859 (4th Cir. 1980) (adopting view that Rule 407 applies to products liability actions).

Plaintiffs should not be permitted on summary judgment or at trial to introduce evidence of Defendants' remedial measures and the issuance of SB546 after the November 19, 2016

---

opinion that the accident was caused by Mr. Couls' loss of control of the subject motorcycle when the motorcycle experienced a "sudden unintended acceleration." First, Mr. Shaw explained that "[n]ot all bikes got – that gap between the twist grip and the end weight finisher varies because of the tolerance on this complicated assembly." Plaintiffs' Opp. Exhibit 8 (A. Shaw Aug. 20, 2020 Dep. Tr.) at 58:1-4. In other words, not every motorcycle that was subject to SB546 had stacked tolerances that may lead to an insufficient airgap when the heated grip expanded.  Mr. Shaw further testified that Triumph's investigation and testing demonstrated that even if a 2016 Triumph Bonneville T120 had stacked tolerances, the throttle would not have jammed but simply experienced "increased friction" which "won't necessarily snap the throttle shut." *Id.* at 65:10-66:7. Lastly, Mr. Shaw noted that a jammed throttle would create a "static" condition and "if you're static, [the motorcycle] will maintain speed." *Id.* at 73:20-21. Mr. Shaw's testimony does not establish that a "sudden unintended acceleration" could occur in a defective motorcycle and Plaintiffs and Mr. Bloch do not offer a scintilla of independent evidence that such an event could happen.

accident on the issues of whether Mr. Couls' motorcycle was defective or if the alleged defect in the motorcycle caused the accident.[5] This Court should not consider on summary judgment on the questions of defect and causation: (1) SB546 itself (dated January 25, 2017); (2) TML's January 9, 2017 Recall Committee Notes regarding its investigation and decision to issue SB546; (3) TML's January 17, 2017 "Report 204 – Heated Grip Thermal Expansion" which included the results of TML's recall investigation; and (4) all post-January 2017 reporting to and communications with NHTSA. The preclusion should also include all testimony offered by any witness, including Defendants' corporate witnesses (Jesse Nunn, Adrian Shaw and Charles Smart) (Plaintiffs' Opp. Exhibit 5) and Plaintiffs' liability expert Byron Bloch (Plaintiffs' Opp. Exhibits 15-16), addressing these subsequent remedial measures.  Plaintiffs should be barred from introducing inadmissible Rule 407 evidence through the backdoor of witness testimony.

Rule 702 precludes this type of evidence for the very purpose Plaintiffs attempt to introduce it in opposing summary judgment (and on their own partial summary judgment motion). Plaintiffs intend to introduce this evidence at trial for the same purpose and would likewise be inadmissible at that stage under Rule 407. The introduction of this subsequent remedial evidence on summary judgment and at trial would violate the plain meaning of Rule 407 and also defeat the rationale behind it; namely that post-accident "conduct is not in fact an admission" of liability and the strong policy considerations in encouraging parties to improve safety measures. Fed. R. Evid. 407, Notes

---

[5] Mr. Couls' accident was not considered as part of Triumph's recall investigation. The accident was not known to Triumph until TML, during its regular monitoring process, discovered Ms. Bishops' Vehicle Owners Questionnaire ("VOQ") in early 2018, well over a year after the accident. TML then cross-referenced publicly available information with the VOQ to identify the subject motorcycle's VIN. Triumph reported this discovery to NHTSA in May 2018. *See* May 29-30, 2018 emails between C. Smart and Leo Yon, NHTSA (TML000663-000665) (Copies of the marked confidential records can be submitted upon request). NHTSA responded and independently determined that the circumstances of the accident, upon its own review of the VOQ and accident report, were unrelated to the stacked tolerance condition addressed in SB546. *Id.*

of Advisory Committee. To find this evidence admissible would further award Plaintiffs for their failure to adduce any independent evidence, both lay and expert, establishing that the subject motorcycle had the condition that SB546 addressed (stacked tolerances causing an insufficient airgap with expansion of the heated twist grip) or that this condition could cause a "sudden unintended acceleration." Plaintiffs can offer no method of introducing this evidence at trial to prove the existence of a defect in the subject motorcycle.

Because Plaintiffs' evidence of subsequent remedial measures, such as SB546 and TML's post-incident investigation, constitute inadmissible evidence for the purpose of proving Mr. Couls' motorcycle was defective or Defendants' liability, this Court should strike each evidentiary reference to Plaintiffs' Opposition Exhibits 1, 2, 7, and 9 in their entirety and applicable portions of Exhibits 5, 8, 15 and 16 from the summary judgment record and disregard this evidence in evaluating Defendants' Motion for Summary Judgment.

## C.    Plaintiffs' Other Incident Evidence Is Inadmissible To Demonstrate Defect

Plaintiffs seek to introduce other incident evidence ("OSI") of warranty claims, customer complaints, and communications between Defendants and non-party entities to overcome summary judgment. *See* Plaintiffs' Opposition, at 3-4; Plaintiffs' Opp. Exhibit 3.  Plaintiffs intend to introduce this OSI evidence at trial for the same purpose.   However, the OSI evidence adduced in this lawsuit should be deemed inadmissible on summary judgment and at trial, because Plaintiffs have no expectation of satisfying the heightened substantial degree of similarity standard required for OSI evidence.  In addition, the statements of non-parties in much of this evidence constitute inadmissible hearsay and are inherently unreliable.  *See* Fed. R. Evid. 802.

"Where other-incident evidence is offered to prove the existence of a defect or negligence, a high degree of similarity is required." *Landis*, 5 F. Supp. 3d at 812-813; *see also Hershberger v.*

*Ethicon Endo-Surgery, Inc.*, 2012 U.S. Dist. LEXIS 45220, *5-6 (S.D.W. Va. Mar. 30, 2012); *Scruggs v. GM LLC (In re GM LLC),* 2017 U.S. Dist. LEXIS 164730, *334-335 (S.D.N.Y. Oct. 3, 2017) ("Where evidence is offered to prove the existence of a defect or causation, the proponent must show 'a high degree of similarity' between the accident at issue and the other accidents."). "Prior to admitting evidence of other incidents, however, the proponent of the evidence must present a factual foundation for the Court to determine that the other incidents were 'substantially similar' to the allegations at issue." *Hershberger*, 2012 U.S. Dist. LEXIS 45220, at *5-6; *Brooks v. Chrysler Corp.*, 786 F.2d 1191, 1195 (D.C. Cir. 1986) ("Evidence of prior instances is admissible on the issues of the existence of a design defect and a defendant's knowledge of that defect only if a plaintiff shows that the incidents occurred under circumstances substantially similar to those at issue in the case at bar.").

"Substantial similarity generally requires the proponent of other incidents evidence to establish: (1) the products are similar; (2) the alleged defect is similar; (3) causation related to the defect in the other incidents; and (4) exclusion of all reasonable secondary explanations for the cause of the other incidents. *Hershberger*, 2012 U.S. Dist. LEXIS 45220, at *6-7 ("Notwithstanding these similarities, nowhere in the incident files is there any indication that reasonable secondary explanations for the other incidents were eliminated. The most obvious reasonable secondary explanation, which to the Court's knowledge was not ruled out in any of the forty-five other incidents, is surgical team error. Put simply, the forty-five other incidents are not clearly the result of a faulty Ethicon stapler, and thus, they are not substantially similar so as to permit their admission as direct evidence of negligence or a defect."); *see also Buckman v. Bombardier Corp.*, 893 F. Supp. 547, 552 (E.D.N.C. 1995); *Scruggs*, 2017 U.S. Dist. LEXIS 164730, at *337 (finding that plaintiff had not met burden of substantial similarity where she had

not offered evidence excluding "all reasonable secondary explanations for the cause of the other incidents.")

Plaintiffs cannot satisfy the heightened standard of substantial similarity to introduce warranty claims, customer complaints, and communications between TML or TMA and their respective authorized independent distributors and dealers involving other 2016 Bonneville T120s as evidence of defect. Plaintiffs cannot establish a factual foundation to establish that the "defect", Mr. Couls' accident causation, and circumstances surrounding each of these claims is similar. Nor do Plaintiffs have any expectation of exclusion of all reasonable secondary explanations for the cause of the other incidents.

For example, the evidence in this matter demonstrates that at no time did TML or TMA receive a claim, complaint, report or allegation that one of Triumph's 2016 Triumph Bonneville T120s or its operator experienced a sudden unintended acceleration when the heated twist grip was operating. *See* Plaintiffs' Opp. Exhibit 3. None of the claims or reports received by Defendants or offered by Plaintiffs in their summary judgment filings involved a seized throttle, or in other words, a throttle that could not be manually closed. *Id.* None of the other incidents reported to or investigated by TML involved the operation of a 2016 Triumph Bonneville T120 on the highway or at high speeds. *Id.* None of the other incidents involved the operation of 2016 Triumph Bonneville T120 in windy conditions, including the extreme conditions in which Mr. Couls was operating on November 19, 2016. *Id.* None of the other incidents involved a report of bodily injury or death. *Id.*

Moreover, the OSI evidence Plaintiffs seek to introduce contains little to no context or factual foundation, constitutes inadmissible hearsay, and is inherently unreliable. For example, the "July 28, 2016" warranty claim from a New Hampshire authorized independent dealer that

Plaintiffs seek to introduce was prepared by that dealer, makes no mention of the heated handgrip, and in light of the date of the record (mid-summer), it cannot be reasonably inferred that the customer had actually turned on the heated handgrip. *Id.* at Triumph0001723-1724. Plaintiffs have not offered any evidence to show that the heated handgrip was ever turned on or eliminated that the customer had modified or damaged the motorcycle, causing the reported insufficient "space between grip and bar end." There is nothing in the record that documents the circumstances that led the customer to report issues with the throttle, but the absence of any allegation of sudden unintended acceleration, personal injury, or damage to the motorcycle is glaring. *Id.* at Triumph0001723-1724. Lastly, this warranty claim constitutes inadmissible double hearsay. These same objections for lack of context, background and unreliability apply to the "June 18, 2016" Australian, "October 7, 2016" Greece, "October 18, 2016" Spanish, and "October 22, 2016" South Carolina warranty claims, and warrant their preclusion as evidence showing a defect in Mr. Couls' motorcycle.[6]   *Id.*   at   TML000487-000488;   TML000477-000486;   TML000491-00494; Triumph0001720-1721.

Plaintiffs also rely heavily on the communications between TML and its Japanese distributor ("Tri-Japan") beginning on September 26, 2016. *See* Plaintiffs' Opp. Exhibit 3 at TML00419-000476. By mid-October 2016, Tri-Japan reported five motorcycles that experienced stiction, none of which involved circumstances identical or similar to Mr. Couls' motorcycle or the events of November 19, 2016. *Id.* Tri-Japan's representative first reported an issue when a Japanese dealer reported to Tri-Japan that it observed stiction between the heated hand grip and

---

[6] As demonstrated in great detail, *infra*, these "dates" constitute the date a dealer created a warranty claim but do not constitute the date the dealer reported ("imported") the claim to TML or the date that TML became aware of the claim.

bar end weight when the heat was operating while blipping[7] the throttle as part of a pre-delivery inspection. *Id.* atTML000476. The dealer also reported to Tri-Japan another motorcycle in which a customer reported stiction. *Id.* Tri-Japan investigated two motorcycles in its possession and identified a similar stiction issue while blipping the twist grip. *Id.* The evidence is indisputable that no stiction was reported when Fredericktown Yamaha conducted its PDI of Mr. Couls' motorcycle in April 2016 immediately before the sale to Mr. Couls, which included an inspection of the heated handgrip in operation and impact on throttle. *See* Declaration of Ian Riley, attached hereto as Exhibit 1, at ¶3; April 5, 2016 Pre-Delivery Inspection, attached hereto as Exhibit 2. It is also indisputable that Mr. Couls never reported any stiction or any other throttle twist grip-related issues (other than the replacement he performed of the right bar end weight after he dropped the motorcycle).  Moreover, even if Plaintiffs could somehow demonstrate that the Tri-Japan reports were substantially similar, the email communications between it and TML contain inadmissible hearsay and in the context of the Japanese dealer, inadmissible double hearsay. Plaintiffs' Opp. Exhibit 3 at TML00419-000476. As such, Plaintiffs has no expectation of establishing a factual foundation establishing that these Japanese claims and motorcycles were substantially similar to Mr. Couls' motorcycle or the circumstances of his accident, and if Plaintiffs did so, this evidence should still be found inadmissible as hearsay.

Because Plaintiffs cannot satisfy each of the elements necessary to establish the heightened substantial similarity threshold to introduce OSI evidence to prove defect, this Court should find Plaintiffs' introduction of OSI evidence on summary judgment as inadmissible and strike that

---

[7] Blipping is the process of opening a throttle and then releasing it by removing one's hand while a motorcycle is stationary. A motorcycle operator will not blip a throttle or completely remove his or her hand from the throttle twist grip while operating the motorcycle, particularly on the highway.

11

evidence, as contained in Plaintiff's Opp. Exhibit 3, from the summary judgment record. This Court should not consider OSI evidence in evaluating Defendants' Motion for Summary Judgment.

**D.     Plaintiffs' "Timeline" Lacks Evidentiary Support, Is Immaterial To The Issue Of Defect And Is Misleading**

In addition to their impermissible attempt to introduce warranty claims and reports as evidence of defect, Plaintiffs also utilize this OSI evidence to intentionally fabricate a timeline of events as to when and how Defendants became aware of a potential stiction issue related to the heated throttle twist grips on 2016 Triumph Bonneville T120 motorcycles. This timeline is also entirely immaterial to the elements of defect and causation in consideration on Defendants' Motion for Summary Judgment. Accordingly, this "timeline" should be stricken from the summary judgment record as it relates to Plaintiffs' products liability claims and request for punitive damages.

The most apparent mischaracterization of the record in the timeline is Plaintiffs' assertion that the first warranty claim related to stiction with the heated handgrips was on June 18, 2016 from an Australian customer or dealer. Plaintiffs' Opp. Exhibit 3 at 487-488. However, Charles Smart, one of TML's corporate witnesses deposed in this matter, testified on July 23, 2020 that TML would not have received this warranty until September 17, 2016. *See* C. Smart July 23, 2020 Dep. Tr.), attached hereto as Exhibit 3, at 59:8-60:13. Mr. Smart explained that the June 18, 2016 date on the warranty claim was the date that the dealer created a record of the claim ("Date Created") but that the warranty claim would not have been received by TML until it was imported for credit by the dealer ("Credit Reference"), which was September 17, 2016 on this claim. *Id.* The creation date also did not necessarily mean the work was performed by the dealer that day either. *Id.* 59:8-60:5. The independent dealer would therefore control the initial release of this

12

information.[8] *Id.* As a result, the first warranty claim of stiction involving a 2016 Triumph Bonneville T120 was imported to TML on August 4, 2016 (not July 28, 2016 when the claim was created by the dealer). *Id.* at 70:8-19; Plaintiffs' Opp. Exhibit 3 at Triumph0001723-1724.

Mr. Smart then explained that TML's warranty department would not have seen the warranty claim as represented in document TML000487-000486, but rather as a series of statistics based on different codes, including fault codes, produced at the end of the month. Exhibit 4 at 60:19-72:6. These statistics would allow for TML to evaluate any trends in fault codes and potential issues related to any component in TML's different models and model years of motorcycles. *Id.* TML could then upload the warranty claim for further detail and follow-up with the dealer if warranted.

Accordingly, the earliest the Australian warranty claim would have been considered as part of a trend for consideration of a service bulletin or a recall would have been late September or early October 2016. However, absent the aforementioned communications from Tri-Japan and a Greek dealer involving a single motorcycle on the same day on September 26, 2016, two imported worldwide warranty claims (one imported in September 2016, along with another imported a month earlier in August 2016 (the NH claim)) out of 6348 motorcycles worldwide, does not, in any meaning of the word, constitute a trend.  Plaintiffs' timeline indicating or strongly suggesting that TML knew of the Australian claim in June 2016 is, therefore, devoid of any factual basis and distorts the summary judgment record.

Furthermore, Plaintiffs intentionally muddy when and how TML commenced its internal investigation of the heated handgrip, claiming that TML should have commenced its investigation and testing immediately on September 26, 2016 and that TML should have also issued a recall

---

[8] Mr. Smart noted that the dealer's delay of three months in importing the record was not unusual. *Id.* at 60:6-13.

notice and correction much earlier than January 2017. Plaintiffs offer no qualified expert evidence regarding Defendants' legal and statutory duties to support this meritless contention. This contention is also belied by the record showing that TML actually took immediate action, requesting on September 27, 2016 that Tri-Japan mail TML the components at issue so TML's Quality Department could review them as part of an upcoming investigation. *See* Plaintiffs' Opp. Exhibit 3 at TML000419-000477. Those parts from Japan did not arrive until October 18, 2016, but TML's Quality Department nonetheless commenced its investigation days earlier on October 14, 2016.[9] *Id.* at TML000425; Plaintiffs' Opp. Exhibit 9 at TML000602. What is also apparent from the record but ignored by Plaintiffs is that TML tested a 2016 Triumph Bonneville T120 with its heated handgrips turned on at TML's factory at the request of Tri-Japan on September 26 or 27, 2016. *See* Plaintiffs' Opp. Exhibit 3 at TML000443. The twist grip on that motorcycle did not experience any stiction, which was reported back to Tri-Japan. *Id.* As a result, TML required the necessary information and components to first establish the existence of a potential issue in this model year motorcycle even if, as TML came to find out, not all of these motorcycles were in a condition that raised an issue. *Id.* at TML000428 (TML warranty department, in writing to Tri-Japan on October 17, 2016, notes that "We are in the process of trying this and to understand the issues. When we have some answers I will inform you" in following up on request for parts so TML can investigate root cause of issue).

Lastly, but not of less importance, Plaintiff's purported timeline evidence is immaterial to the essential elements of defect and causation, as this timeline evidence post-dates the design, manufacture and sale of Mr. Couls' motorcycle in April 2016. *See Alevromagiros v. Hechinger*

---

[9] The first Japanese warranty claim was actually imported on October 11, 2016 and Tri-Japan indicated that it had mailed the components on October 13, 2016. *See* Plaintiffs' Opp. Exhibit 3 at TML000420, 00425; 000489.

*Co.*, 993 F.2d 417, 420 (4th Cir. 1993) (a plaintiff must first establish that a product contained a "defect which rendered it unreasonably dangerous for ordinary or foreseeable use," the defect must have "existed when it left the defendant's hands" and even after proving a product was defective when it left a defendant's hands, a plaintiff must still then prove that the defect "actually caused the plaintiff's injury").

Accordingly, this Court should strike all timeline evidence, as presented by Plaintiffs, from the summary judgment record as it is demonstrably misrepresented in Plaintiffs' Opposition and otherwise immaterial to the issues of defect and causation at issue in Defendants' Motion for Summary Judgment.

**E.     The 2015 NHTSA Consent Order Is Immaterial**

Plaintiffs pepper their Opposition with references to the 2015 Consent Order entered into between NHTSA and Triumph. *See* Plaintiffs' Opp. Exhibit 4. The 2015 Consent Order, which predates the sale of the first 2016 Triumph Bonneville T120 to the public by months, addressed deficiencies by Triumph in its reporting requirements to NHTSA in regard to an issue in 2012-2013 Triumph Street Triple R motorcycles. *Id.* at ¶¶12, 20-25. Triumph was ultimately issued a fine for these reporting violations. *Id.* at ¶¶26-27. The 2015 Consent Order did not address the merits or substance of the recall safety bulletin issued for the 2012-2013 Triumph Street Triple R motorcycles or whether those motorcycles were defective in design, manufacture, or in warning. Lastly, the issues for the 2012-2013 Triumph Street Triple R involved a condition in which the four bolts that secure the two cable guides on either side of the headstock do not contain threadlock, which could result in the bolts potentially loosening. *Id.* at ¶12. In other words, a component completely unrelated to the throttle twist grip or heated grip function.

The 2015 Consent Order has no probative value in this matter, particularly on the issues of whether Mr. Couls' motorcycle was defective and whether that defect caused Mr. Couls' accident. There is no relationship between the reporting violations issued against Triumph involving an entirely different model and model year motorcycle, years prior to production of the 2016 Triumph Bonneville T120.  There is no relationship between the condition that led to the recall bulletin for the 2012-2013 Triumph Street Triple R and the stacked tolerances in the handlebar assembly at issue in the 2016 Triumph Bonneville T120.  The 2015 Consent Order does not make more or less likely that Mr. Couls' motorcycle was in the condition contemplated for remedy in SB546. Tellingly, Plaintiffs do not cite any investigation or violation issued by NHTSA in connection with Triumph's recall of the 2016 Triumph Bonneville T120 at issue in SB546, much less that NHTSA issued any statement that Triumph failed to fully comply with the terms of the 2015 Consent Order.

Accordingly, this Court should strike the 2015 Consent Order (Plaintiffs' Opp. Exhibit 4) from the summary judgment evidence and not consider it as part of its evaluation of Defendants' Motion for Summary Judgment.

**F.** **Certain of Plaintiffs' Objections and Responses to Defendants' SUMF Should Be Stricken**

This Court should strike certain of Plaintiffs' objections and responses to Defendants' SUMF to the extent that the asserted objections are not supported by law and the responses disputing the SUMF are not supported by cited evidence, or admissible or material evidence. Where Plaintiffs' response is stricken, Defendants statement should be then deemed admitted.

The governing Scheduling Order provides that "[f]actual assertions made in memoranda should be supported by specific references to affidavits, depositions or other documents made a part of the record before the Court. Copies of the supporting documents, or relevant portions thereof, should be appended to the memoranda." Scheduling Order at ¶ 7.b, ECF No. 41 (issued

252315810v.1

March 27, 2019). While the Scheduling Order does not expressly address a parties' responses to the movant's SUMF, the Order states that motion practice is governed by LR Civ P 7.02. LR Civ P 7.02(a) requires a "short and plain statement of uncontroverted facts" in support of a motion for summary judgment. Moreover, Fed. R. Civ. P. 56(c)(1)(B) provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Thus, reading the requirements of the Scheduling Order, Local Rule 7.02, and Fed. R. Civ. P. 56(c)(1) in conjunction, Plaintiffs were required to respond to Defendants' "factual assertions" or "short and plain statements" with "specific references to affidavits, depositions or other documents made a part of the record before the Court," or by challenging the evidence cited by Defendants. This Court should therefore strike Plaintiffs' responses where Plaintiffs fail to cite admissible evidence, fail to cite evidence establishing a genuine issue of material fact with the evidence cited or offer baseless objections to avoid challenging the record established by Defendants' statement, including as to the following:

- Defendants' SUMF #6 – Plaintiffs cite to subsequent remedial measures evidence to dispute Defendants' statement that TML had no reported instances of stiction during its pre-production testing of the Triumph Bonneville T120.

- Defendants' SUMF #8 – Plaintiffs cite to no evidence in denying in part Defendants' statement.

17

- Defendants' SUMF #9 – Plaintiffs cite to no evidence in denying in part Defendants' statement.

- Defendants' SUMF #10 – Plaintiffs cite to no evidence in denying in part Defendants' statement.

- Defendants' SUMF #11 – Plaintiffs cite to no evidence in denying in part Defendants' statement.

- Defendants' SUMF #12 – Plaintiffs cite to no evidence in denying in part Defendants' statement. Moreover, Plaintiffs' objection under the Deadman's Statute, W. Va. Code §57-3-1 is without merit, to the extent that West Virginia evidentiary rules would apply here, as the Supreme Court of Appeals of West Virginia invalidated the statute in *State Farm Fire & Cas. Co. v. Prinz*, 231 W. Va. 96, 97 (2013).

- Defendants' SUMF #14 – Plaintiffs cite to no specific evidence or testimony that establish a genuine factual dispute with regard to Defendants' statement. Moreover, Plaintiffs' objection under the Deadman's Statute, W. Va. Code §57-3-1 is without merit, to the extent that West Virginia evidentiary rules would apply here, as the Supreme Court of Appeals of West Virginia invalidated the statute in *State Farm Fire & Cas. Co. v. Prinz*, 231 W. Va. 96, 97 (2013).

- Defendants' SUMF #16 – Plaintiffs cite to no evidence in denying in part Defendants' statement.

- Defendants' SUMF #18, 23, 27, 29, 30, 32-44 – Plaintiffs cite to no admissible evidence or testimony to dispute Defendants' statement.

252315810v.1

- Defendants' SUMF #18, 23, 27, 29, 30, 37[10] – Plaintiffs cite no authority that the testimony of accident witness Tisa Mullins must be stricken because Plaintiffs' counsel did not attend her July 9, 2019 deposition. Plaintiffs cannot deny that on June 28, 2019, through this Court's ECF system (ECF No. 57), they were served with the subpoena that stated that date, time and location of Ms. Mullins' deposition. This June 28 notice was 11 days before Ms. Mullins' deposition. Plaintiffs also do not contest that multiple email addresses associated with Plaintiffs' counsel receive notice from this Court's ECF system. As any counsel diligently representing a client, Plaintiffs' counsel obviously reviewed the June 28, 2019 subpoena and would not have ignored ECF notifications from this Court. Yet no one from Plaintiffs' counsel's office advised Defendants' counsel of any conflict with the July 9, 2019 date, much less that all counsel associated with Plaintiffs' counsel were unavailable on July 9, 2019. Further, Plaintiffs cannot dispute that the June 28, 2019 filing was made by a West Virginia licensed attorney admitted to practice before this Court (Mr. Dunham), the same "local counsel" who also attended the deposition on July 9, 2019, even if not in the deposition room for parts of the deposition. Plaintiffs also fail to note that the entire deposition lasted less than two hours. Further, a review of Defendants' counsel's website would have informed Plaintiffs that Mr. Dunham is admitted to practice before this Court, and that counsel has offices in West Virginia. Further, Plaintiffs' counsel have known that this deposition took place since shortly after it took place in July 2019, yet never made one step to take Ms. Mullins' deposition, despite discovery not closing

---

[10] Ms. Mullins' testimony is also cited in Defendants' SUMF #34, but Plaintiffs responded that "Plaintiffs' do not dispute the cited testimony."

until February 2021, almost *two years* later. Plaintiffs' counsel even had a copy of the full deposition transcript from that deposition many months before discovery ended. Counsel never made one step to take her deposition. Regardless, Plaintiffs cite no authority that Ms. Mullins' deposition transcript must be excluded.

- Defendants' SUMF #24 – Plaintiffs cite to no specific evidence or testimony that establish a genuine factual dispute with regard to Defendants' statement. Nowhere in the testimony of the Picketts, Ms. Bishop, and Messrs. Wicker, Lacey, and Bloch or any other admissible evidence establish that Mr. Couls' motorcycle's throttle twist handgrip experienced stiction, jamming or any impediment of its smooth operation.

- Defendants' SUMF #25 – Plaintiffs cite to no admissible evidence or testimony on the issue of defect in denying Defendants' statement.

- Defendants' SUMF #26, 28 – Plaintiffs cite to no admissible evidence or testimony in denying Defendants' statement. In addition, Plaintiffs' assert a baseless objection regarding whether a plaintiff can be held comparatively negligent in a strict liability claim.  West Virginia law permits a jury to consider the comparative negligence of the plaintiff on strict liability claims for misuse of the product. *See* W.V. Code §55-7-13a-d. Regardless, Plaintiffs' objection is inapplicable as Defendants' statement makes no legal contention regarding the applicability of comparative negligence in this lawsuit. Lastly, Plaintiffs' objection to Defendants' citations to Defendants' liability experts' reports is without merit, as Fed. R. Civ. P. 26 does not require an expert report to be signed under oath. Plaintiffs offer no citation to support that position.

- Defendants' SUMF #45 – Plaintiffs cite to no evidence or testimony to establish a genuine issue of material fact and only offer evidence that is inadmissible on the issue of defect in denying Defendants' statement.

- Defendants' SUMF #47 – Plaintiffs cite to no evidence or testimony to establish a genuine issue of material fact and only offer evidence that is inadmissible on the issue of defect in denying Defendants' statement.

- Defendants' SUMF #48 – Plaintiffs cite to no evidence or testimony to establish a genuine issue of material fact and only offer evidence that is inadmissible on the issue of defect in denying Defendants' statement.

- Defendants' SUMF #49 – Plaintiffs cite to no evidence or testimony to establish a genuine issue of material fact and only offer evidence that is inadmissible on the issue of defect in denying Defendants' statement. Plaintiffs further misrepresent the Recall Committee notes, which unequivocally state that one of the 11 claims originally investigated was eliminated due to damage caused by the motorcycle's owner.

- Defendants' SUMF #50 – Plaintiffs cite to no evidence or testimony to establish a genuine issue of material fact and only offer evidence that is inadmissible on the issue of defect in denying Defendants' statement. Moreover, this Court should disregard Plaintiffs' baseless allegation of spoliation, which rehashes contentions that Plaintiffs made to this Court earlier this year, and this Court rejected, in denying Plaintiffs' efforts to serve untimely fact discovery.

- Defendants' SUMF #52 – Plaintiffs cite to no admissible evidence or testimony to dispute Defendants' statement.

- Defendants' SUMF #54 – Plaintiffs' cited evidence does not create a genuine factual dispute as to Defendants' statement.

- Defendants' SUMF #55 – Plaintiffs' cited evidence does not create a genuine factual dispute as to Defendants' statement.

- Defendants' SUMF #56 – Plaintiffs' cited evidence does not create a genuine factual dispute as to Defendants' statement.

- Defendants' SUMF #57 – Plaintiffs cite to no admissible evidence or testimony to dispute Defendants' statement.

- Defendants' SUMF #58 –Plaintiffs cite to no admissible evidence or testimony in denying Defendants' statement. In addition, Plaintiffs' assert a baseless objection regarding whether a plaintiff can be held comparatively negligent in a strict liability claim.  West Virginia law permits a jury to consider the comparative negligence of the Plaintiff on strict liability claims for misuse of the product. *See* W.V. Code §55-7-13a-d. Regardless, Plaintiffs' objection is inapplicable as Defendants' statement makes no legal contention regarding the applicability of comparative negligence in this lawsuit.

- Defendants' SUMF #59 – Plaintiffs cite to no specific admissible evidence or testimony to dispute Defendants' statement. Plaintiffs' reference to Mr. Bloch's report and testimony presumably relates to his recitation of subsequent remedial measure evidence inadmissible on the issue of defect and liability.

- Defendants' SUMF #60 – Plaintiffs cite to no admissible evidence or testimony to dispute Defendants' statement and simply offer a baseless objection.

22

- Defendants' SUMF #61 – Plaintiffs cite to no specific admissible evidence or testimony to dispute Defendants' statement. Plaintiffs' reference to Mr. Bloch's report and testimony presumably relates to his recitation of subsequent remedial measure evidence inadmissible on the issue of defect and liability.

- Defendants' SUMF #64 – Plaintiffs cite to no specific admissible evidence or testimony to dispute Defendants' statement. Plaintiffs' reference to Mr. Bloch's report and testimony presumably relates to his recitation of subsequent remedial measure evidence inadmissible on the issue of defect and liability.

Accordingly, Defendants respectfully request that this Court strike the above identified responses and objections of Plaintiffs to Defendants' SUMF and, in turn, admit Defendants' statements.

### III.    CONCLUSION

Certain of Plaintiffs' summary judgment evidence is inadmissible under one or more rules of the Federal Rules of Evidence. In addition, certain of Plaintiffs' responses to Defendants' Statement of Undisputed Material Facts are unsupported and should be stricken. Accordingly, the Court should strike certain of Plaintiffs' summary judgment evidence and responses, as addressed herein, from the summary judgment record.

Dated: April 16, 2021                          Respectfully submitted,

                                               **SHUMAN MCCUSKEY SLICER PLLC**

                                               _/s/ David L. T. Butler_
                                               David L.T. Butler (WV Bar #11339)
                                               300 Wedgewood Drive, Suite 110
                                               Morgantown, WV 26505
                                               Telephone: (304) 291-2702
                                               Facsimile: (304) 291-2840
                                               dbutler@shumanlaw.com

252315810v.1

John F. McCuskey (WV Bar #2431)
1411 Virginia St. E. Suite 200
Charleston, WV 25339
Telephone: (304) 345-1400
Facsimile: (304) 343-1826
jmccuskey@shumanlaw.com

**WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP**

Shadonna E. Hale (WV Bar #8941)
David M. Ross, *Admitted Pro Hac Vice*
1500 K Street, N.W., Suite 330
Washington, DC  20005
Telephone: (202) 626-7687
Facsimile: (202) 628-3606
shadonna.hale@wilsonelser.com
david.ross@wilsonelser.com

Philip Quaranta, *Admitted Pro Hac Vice*
1133 Westchester Avenue
White Plains, New York 10604
Telephone: (914) 872-7238
Facsimile: (914) 323-7001
philip.quaranta@wilsonelser.com

*Counsel for All Defendants*

252315810v.1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

SUSAN BISHOP, Individually and as
Personal Representative of the Estate of
JOHN F. COULS, Decedent,

        Plaintiffs,

v.

TRIUMPH MOTORCYCLES (AMERICA)
LIMITED, et al.,

        Defendants.

Case No.  3:18-cv-186-GMG
Judge: Gina Groh

**CERTIFICATE OF SERVICE**

    I certify that I served a true copy of the foregoing on all counsel of record via ECF on April 16, 2021.

           */s/ David L. T. Butler*
           David L.T. Butler (WV Bar #11339)

252315810v.1