**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**


**SUSAN BISHOP, Individually and as
Personal Representative of the Estate of
JOHN F. COULS, Decedent,**


      Plaintiffs,


**v.**                                                        **CIVIL ACTION NO.: 3:18-CV-186
(GROH)**


**TRIUMPH MOTORCYCLES (AMERICA) LIMITED,
TRIUMPH MOTORCYCLES LIMITED, and
FREDERICKTOWN YAMAHA,**


      Defendants.


**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY
AND MOTION FOR SUMMARY JUDGMENT**

      Currently before the Court are the Defendants' Motion to Exclude Expert Testimony

and Report of Byron Bloch [ECF No. 160] and Motion for Summary Judgment [ECF

No. 268].  The matters have been fully briefed and are ripe for adjudication.  In summary,

the Defendants argue that (1) the Court should exclude the testimony and expert report of

the Plaintiffs' liability expert, Byron Bloch, because he is not qualified to testify as an expert

in this case, and his methodology fails the <u>Daubert</u> reliability test; and (2) without Bloch's

testimony, the Plaintiffs cannot meet their burden of establishing a products liability claim against the Defendants, and thus, the Defendants are entitled to judgment as a matter of law.  For the reasons stated below, the motions are both **GRANTED**.

## I.    BACKGROUND

This case arises from a fatal motorcycle accident that occurred on November 19, 2016.   The decedent, John Couls, died when his 2016 Triumph Bonneville T120 motorcycle (the "Couls motorcycle") crossed the grass median into opposite traffic while traveling on Route 9 near Ranson, West Virginia.  See ECF No. 263-3.

In January 2017, Defendant Triumph Motorcycles Limited ("TML") issued a Safety Action Recall Notice of 2016 and 2017 Bonneville T120 motorcycles (the "T120 motorcycles"), including the Couls motorcycle.   ECF No. 275-4 at 11.   The T120 motorcycles were built with a newer handlebar grip than TML's previous models.  Id. at 10.  Beginning in October 2016, TML received warranty claims for the T120 motorcycles alleging the throttle was slow to return or would stick when the heated handlebar grips were activated.  Id. at 9.  After TML's Recall Committee found that "the symptom had the potential to affect the rider's ability to reduce speed in a fully controllable manner," TML decided to recall the T120 motorcycles.  Id. at 10.  TML designed a spacer for the T120 motorcycles to prevent the throttle sticking issue by allowing room for expansion of the handgrip when heated.  Id.  On February 16, 2017, approximately three months after the accident, Plaintiff Susan Bishop received a Safety Recall Notice that TML sent to the decedent.  Id. at 2.  The notice stated that there was "a defect which relates to motor vehicle safety in certain [T120 motorcycles]," and the Couls motorcycle "may be affected." Id.

2

On November 15, 2018, the Plaintiffs filed this products liability action.  The Plaintiffs allege that the decedent's death was caused by a sudden, unintended acceleration ("UIA") of the Couls motorcycle due to a defect in its heated handgrip system. ECF No. 34 ¶ 30.  The Plaintiffs' Amended Complaint, filed on February 28, 2019, asserts seven survival and seven wrongful death claims sounding in products liability against the Defendants: strict liability (Counts 1 & 2), defective design (Counts 3 & 4), manufacturing defect (Counts 5 & 6), failure to warn (Counts 7 & 8), breach of express warranty (Counts 9 & 10), breach of implied warranty of merchantability (Counts 11 & 12),[1] and loss of consortium (Counts 13 & 14).  The Plaintiffs also seek punitive damages.  Id. at 15.

The Defendants now move to exclude the opinions and report of the Plaintiffs' proposed liability expert, Byron Bloch,[2] and to grant summary judgment in favor of the Defendants.[3]  The Court considers the arguments contained in the Defendants' motions, beginning with their motion to exclude expert testimony.

## II.   ADMISSIBILITY OF EXPERT TESTIMONY

To establish the requisite causal link between the alleged defect in the Couls motorcycle's heated handgrips and the accident for their products liability claims, the Plaintiffs proffer the opinion of their liability expert, Byron Bloch.  See ECF No. 275-4.

---

[1]   However, the Plaintiffs claims for breach of implied warranty of merchantability are substantively claims for breach of fitness for a particular purpose.  See ECF No. 34 at 13–14.

[2]   On April 16, 2021, the Defendants filed their Motion to Exclude Expert Testimony.  ECF No. 160. The Plaintiffs filed a Response in Opposition to the motion on April 30, 2021.  ECF No. 176.  The Defendants filed a supplemental brief on May 26, 2021 [ECF No. 263-2], and the Plaintiffs filed a response to that brief on June 9, 2021.  ECF Nos. 272 & 275.  The Defendants filed a Reply in support of the motion on June 16, 2021. ECF No. 276.

[3]   On June 7, 2021, the Defendants filed their Motion for Summary Judgment.  ECF No. 268.  The Plaintiffs filed a Response in Opposition to the motion on June 10, 2021.  ECF Nos. 280 & 286.  The Defendants filed a Reply in support of the motion on June 28, 2021.  ECF No. 288.

The Defendants move the Court to exclude Bloch's expert testimony and report because (1) Bloch is not qualified to testify as an expert in this case, and (2) Bloch's opinions are not reliable under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993).  The Court considers these arguments in turn.

### A. Expert Designation

Federal Rule of Evidence 702 provides that a witness may be qualified as an expert on the grounds of "knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  "The 'or' indicates that a witness may be qualified as an expert by any one of the five listed qualifications."  Garrett v. Desa Indus., Inc., 705 F.3d 721, 724 (4th Cir. 1983) (citing Dychalo v. Copperloy Corp., 78 F.R.D. 146, 149 (E.D. Pa. 1978)).  The Fourth Circuit holds that Rule 702 is "broadly interpreted," with the "touchstone" inquiry being helpfulness to the trier of fact.  Kopf v. Skyrm, 993 F.2d 374, 377 (4th Cir. 1993).  Thus, "[t]estimony from an expert is presumed to be helpful unless it concerns matters within the everyday knowledge and experience of a lay juror."  Id. (citing Persinger v. Norfolk & Western Railway Co., 920 F.3d 1185, 1188 (4th Cir. 1990)).

The Defendants aver that Bloch is not qualified to testify as an expert on motorcycle design/motorcycle safety or causation on any of Rule 702's five grounds. First, the Defendants argue that Bloch "has no background or experience in motorcycle design, manufacture, assembly, sale, or distribution."  ECF No. 160-1 at 10.  Second, the Defendants aver that Bloch lacks any formal education or training on motorcycle design and safety, stating, Bloch "has never worked as an engineer in the motorcycle industry, . . . does not even have [an] engineering degree, and has never taken a test to become a professional licensed engineer in any jurisdiction."  Id.

4

In response, the Plaintiffs argue that Bloch is qualified to testify as an expert due to his knowledge as a human factors engineer[4] and his experience working as an automobile safety consultant for over forty years.  ECF No. 176-3 at 10–13.  Bloch holds a Bachelor of Arts degree in Industrial Design from the University of California, Los Angeles, with an emphasis in product design and human factors engineering.  See ECF No. 275-3 at 5, p. 17:10–14.  He also completed a graduate program for industrial design at UCLA.  See ECF No. 272-8 at 5.  From 1961 to 1966, Bloch worked as a human factors engineer for a number of companies, including Dunlap and Associates, Inc., a national human factors engineering consulting firm, and General Motors Corporation, which hired him to evaluate the safety, operability, and design factors regarding the handling, oversteer, and rollover properties of the Chevrolet Corvair.  ECF No. 272-8 at 5.  Since 1968, Bloch has testified as an automobile safety expert in approximately thirty motor vehicle "defective design" cases in both state and federal courts.  Id. at 3–4.

Upon review of the written record, the Court finds that Bloch has specialized knowledge on motor vehicle safety design due to his experience as a human factors engineer, despite his lack of a formal engineering degree or license.  See Rupert v. Ford Motor Co., 2015 WL 757402, at *3 (W.D. Pa. Feb. 23, 2015) (finding the same regarding Bloch's expert testimony in an automobile design defect products liability case).  Bloch's knowledge of human factors engineering is not exclusive to automobile design safety.  He has taken at least one human factors engineering course that was "motor vehicles inclusive," meaning that its principles applied to all vehicular modes of transportation,

---

[4]     In his deposition, Bloch describes human factors engineering as the study of how to design motor vehicles to promote safety based on a person's abilities and limitations.  See ECF No. 275-3 at 13, pp. 50–51.

including motorcycles.  See ECF No. 275-3 at 4, pp. 13–15.  Additionally, as Bloch states

in his deposition, analyzing a vehicle's controllability using human factors engineering

applies the same principles in cases of both automobiles and motorcycles:

> A. I would do [the same process] in cases where there are issues of controllability of a vehicle, whether it's runaway acceleration in a Toyota automobile, or whether it's runaway acceleration or unintended – sudden unintended acceleration . . . involving this Triumph motorcycle.
>
> The process that I go through is typically to think, you know, what did [the decedent] see, what did he feel, what time factors were involved, what's the road like, what's the traffic like, what's the lighting like, what are his opportunities to use his hands, his feet, what is the motorbike – motorcycle capabilities of concern.

Id. at 53, pp. 209:13–210:2.  The Defendants have not offered any basis that suggests

motorcycle safety design is a more specialized field of knowledge than that of automobile

safety design,[5] an area that approximately thirty state and federal courts have found Bloch

is qualified to testify as an expert.[6]  See Garrett, 705 F.2d at 724 (rejecting trial court's

finding that "the only expert qualified to testify about the design of stud drivers" was

"someone [in] the industry who actually designs them").

　　Additionally, the Defendants argue Bloch is not qualified to testify as an expert on

---

[5]　　The Defendants aver that during his deposition, Bloch erroneously suggested that "the operation of a car accelerator is identical to that on a motorcycle."  ECF No. 160-1 at 11 n.1; ECF No. 263-2 at 14.  The Court has reviewed the deposition and finds that Bloch did not suggest that the acceleration of a motorcycle is identical to that of an automobile.  Bloch merely stated that he had previously testified as an expert on a "stick[y] accelerator pedal" defect in a Toyota automobile that caused UIAs, which he contended was a "parallel issue" to the "stick[y] throttle control with the Triumph [T120] motorcycle."  ECF No. 275-3 at 19, p. 74:18–22.  His statement actually supports the Court's finding that Bloch has knowledge of motor vehicle design to prevent UIAs, like the alleged UIA in the instant case.

[6]　　The Defendants argue that Bloch is not qualified to testify as a motorcycle safety design expert because the Southern District of Texas excluded his expert testimony in another motorcycle design defect case.  ECF No. 160-1 at 11.  However, the court there did not exclude his testimony because he was not qualified as an expert under Rule 702, but because it found that his methodology was unreliable under Daubert.  See Exclusion Order at 1, Fatery v. Ducati North America, Inc., No. H-17-358 (S. D. Tex. May 24, 2019) (ECF No. 37).  Indeed, the court stated that Bloch's qualifications, or lack thereof, did not affect its ruling: "An engineering degree would not cure these defects and Bloch's lack of one does not affect this decision."  Id.

whether TML delayed in recalling 2016 and 2017 T120 motorcycles and the National Highway Traffic Safety Administration ("NHTSA") reporting requirements because he has not worked on a motorcycle recall and has never worked for the NHTSA.  ECF No. 160-1 at 11.  However, the record shows that Bloch has specialized knowledge of the recall process and the NHTSA's investigative procedure of unsafe vehicles due to his work as an automobile safety consultant.  In 1983, Bloch testified as an expert on NHTSA's investigation process for vehicular safety defects before the U.S. House of Representatives.  ECF No. 272-8 at 9.  He has also testified before the NHTSA and the Department of Transportation as an expert on needless delays of reporting vehicular safety defects and implementing safeguards.  Id.  Additionally, Bloch has published articles on the recall process for vehicles and NHTSA reporting requirements in publications like Automotive Testing International and VISION ZERO International.  Id. at 6–7.  The Defendants do not argue that the recall process or the NHTSA reporting requirements are different for motorcycles and automobiles, and thus, the Court finds that Bloch's knowledge and experience applies to the recall process and the NHTSA reporting requirements at issue here.

Upon review of the record and controlling authorities, Bloch has specialized knowledge that is outside of the everyday knowledge of a lay person on motor vehicle safety design, the recall process for vehicles, and the NHTSA reporting requirements through his knowledge of human factors engineering and his experience of working as an automobile safety consultant for over forty years.  Accordingly, the Court finds that Bloch is qualified to offer his expert opinions under Rule 702.

B. **Daubert Reliability Inquiry**

Federal Rule of Evidence 702 also requires the trial judge to "ensure that any and all scientific testimony or evidence is not only relevant, but reliable." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993). Rule 702 thus "imposes a special gatekeeping obligation on the trial judge" to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Nease v. Ford Motor Co., 848 F.3d 219, 229–30 (4th Cir. 2017) (quoting Daubert, 509 U.S. at 597). Accordingly, even if the Court determines that the opinion is relevant, it may only admit the opinion if it finds it is sufficiently reliable.

Daubert holds that "[p]roposed testimony must be supported by appropriate validation—i.e., 'good grounds,' based on what is known." 509 U.S. at 590. To determine reliability, the Court must conduct "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Id. at 592–93. The U.S. Supreme Court has stated that "[m]any factors will bear on the inquiry, and we do not presume to set out a definitive checklist or test." Id. at 593. In other words, "[r]eliability is a 'flexible' inquiry that focuses on the 'principles and methodology' employed by the expert." Sardis v. Overhead Door Corp., No. 20-1411, slip op. at 15, 2021 WL 3699753, at *6 (4th Cir. Aug. 20, 2021) (quoting Daubert, 509 U.S. at 594–95).

In the Daubert reliability inquiry, the Court generally considers the following nonexhaustive list of factors:

> First, a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested. A second question . . . is whether the theory or technique has been subjected to peer review and publication.

. . . Third, in the case of a particular scientific technique, the court ordinarily should consider the known or potential rate of error.  Fourth, . . . "general acceptance" is . . . relevant to the reliability inquiry.

Nease, 848 F.3d at 229 (quoting Daubert, 509 U.S. at 593–94) (quotation marks omitted).

The Court has "broad latitude" in determining which factors are "reasonable measures of reliability in a particular case."  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 153 (1999).

The opinion "must be based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods."  Oglesby v. Gen. Motors Co., 190 F.3d 244, 250 (4th Cir. 1999) (citing Daubert, 509 U.S. at 592–93).

In his expert report, Bloch offers the following four opinions:

(1) When turned on, the heated handlebar in the Couls motorcycle expanded and "cause[d] the throttle mechanism in the motorcycle to stick or bind," causing a "surprise runaway acceleration that can unsafely affect motorcycle controllability" [the "sticky throttle"].  This defect "more likely than not, within a reasonable degree of certainty, significantly contributed to or caused [the decedent] to lose control of the motorcycle and collide with that other vehicle."

(2) TML failed to adequately test the heated handlebar for any potentially adverse effects during the development and prototype testing process of the 2016 and 2017 T120 motorcycles.

(3) TML received multiple warranty claims regarding the sticky throttle defect in 2016 and 2017 T120 motorcycles from June to September 2016, but it did not begin to investigate the issue until October 2016. In January 2017, it discovered the defect and added a "spacer" to the heated handlebar to allow clearance for expansion and prevent potential sticking or binding.

(4) TML delayed in reporting the safety defect to the NHTSA which "may [have been] a violation of the NHTSA Regulations that require prompt reporting of such safety issues," and "[a] more expeditious response by Triumph would, more likely than not, have recalled and remedied the safety defect" in the Couls motorcycle prior to the fatal motorcycle incident.

ECF No. 275-4 at 15.  Prior to issuing his report, Bloch "inspected and photographed" the Couls motorcycle.  Id. at 14.  In addition to his inspection of the Couls motorcycle, Bloch based his opinions in the report on[7]: (1) the recall notice of the Couls motorcycle that the Plaintiffs received on February 16, 2017, (2) the Traffic Crash Report, including pictures of the accident scene, (3) four warranty claims about the "throttle sticking" issue in the heated handgrips of other TML motorcycles and three internal TML communications indicating other warranty claims, (4) a "Work Instruction for Quality Inspection" that TML issued on January 12, 2017, (5) minutes from TML's recall committee regarding T120 motorcycles in January 2017, and (6) TML's Safety Action Recall Notice of T120 motorcycles ("SB546").

The Court sees a distinction between Bloch's first opinion and his last three; thus, the two groups will be addressed separately.  After extensive consideration of the methodologies Bloch used to arrive at his opinions, the Court finds that they are insufficiently reliable under Daubert.  It is clear to the Court that Bloch did not use scientific methods to arrive at his conclusions.  Thus, Bloch's opinions must be excluded.

### 1. Bloch's First Opinion – UIA and Accident Caused by Sticky Throttle Defect in Couls Motorcycle

Bloch first opines that the accident was most likely caused by a UIA that occurred as a result of the sticky throttle defect when the decedent turned on the heated handlebar on the Couls motorcycle.  Thus, the Court finds that in arriving at this opinion, Bloch necessarily made two conclusions: (1) that the Couls motorcycle had the sticky throttle defect, and (2) that the heated handlebar was on at the time of the accident.

---

[7]      Although not directly cited in his report, Bloch avers that he also reviewed the depositions of eyewitnesses and TML employees, and the "physical parts of the replacement kit for the design defect" in reaching his conclusions.  ECF No. 275-4 at 24; see also ECF No. 275-3 at 23, p. 90:11–23.

Here, Bloch did not perform any tests on the Couls motorcycle, make any hypothetical calculations, or conduct any accident replications to arrive at these conclusions. The Fourth Circuit holds that "[o]ne especially important factor for guiding a court in its reliability determination is whether a given theory has been tested." Nease, 848 F.3d at 231. This Court finds that Bloch's failure to test his theory that the accident was caused by the sticky throttle defect is fatal to finding his opinion reliable under the Daubert framework for two reasons. First and foremost, testing the motorcycle was critical to establish that it had the sticky throttle defect because the defect was not present in all 2016 T10 motorcycles. Second, testing was critical to establish that the heated handlebar was activated at the time of the accident. Indeed, Bloch conceded that during his inspection of the Couls motorcycle, he did not see any "physical evidence that [the heated handlebar] was on because of the displacements of the components" due to the accident. ECF No. 275-3 at 19, p. 77:11–14.

This case is similar to Belville v. Ford Motor Co., 919 F.3d 224 (4th Cir. 2019), where the Fourth Circuit upheld the district court's exclusion of expert opinion and summary judgment. There, the plaintiffs theorized that a defect in a vehicle's pedal sensors caused UIAs. The district court had found it particularly problematic that "none of the Plaintiffs' experts had tested or inspected the Plaintiffs' actual vehicles or attempted to connect their testing to any of those vehicles" [id. at 231] because "testing of the [vehicle's electronic throttle system] was central to the experts' opinions." Id. at 229. Similarly, here, testing the Couls motorcycle was critical because there is no evidence that the Couls motorcycle even had the sticky throttle defect or that the heated handlebar was turned on at the time of the accident. Accordingly, the Court finds that under Fourth

Circuit case law, Bloch's failure to test the Couls motorcycle weighs strongly against finding that his opinion is sufficiently reliable.  See Wells v. Antero Resources Corp., 497 F. Supp. 3d 96, 101 (N.D. W. Va. 2020) (excluding expert's opinion because the expert had not tested or attempted to test his theory).

Because there is no physical evidence or test data to support Bloch's conclusions, they are, at most, inferences.  Significantly, "to the extent an expert makes inferences based on the facts presented to him, the court must ensure that those inferences were derived using scientific or other valid methods."  Sardis, 2021 WL 3699753, at *6 (quoting Oglesby, 190 F.3d at 250) (quotation marks omitted).  Thus, the Court considers whether Bloch's inferences were derived by using scientific or other valid methods.

In his deposition, Bloch explains how he reached his conclusion that the Couls motorcycle had the sticky throttle defect.  He states,

> Triumph themselves, in the owner's manual and in the recall notice and in their committee meeting when they decided it was very important to have a safety defect finding and a recall campaign, **Triumph themselves said that the heated handgrip causes an unsafe throttle situation that can lead to, you now, an accident and a crash.**
>
> Triumph and I agree . . . that the heated handgrip interference with proper throttle control creates a high risk of an out-of-control motorcycle and a crash that could prove fatal.
>
> Again, I don't want to repeat overly, but **Triumph says that in writing multiple times, and I agree with them**, and I reach the same opinion independently . . . as well.
>
> So we concur, they did their work independently and said that, I did my work independently, and I say essentially the same thing, that the heated handgrip is a lethal defect that has – or creates – . . . a high risk of throttle issues that will cause an out-of-control situation for the rider of the motorcycle and will lead to a crash that could be fatal.
>
> **So if you read the owner's manual and read their recall campaign and if you read the minutes of their meetings and other**

> **communications, you will see that Triumph is saying what I'm saying**, that this is an unreasonable safety defect and it creates an unreasonable risk of the vehicle not being controllable.
>
> That's what I believe happened on November 19, 2016, with John Couls riding his motorcycle.

ECF No. 275-3 at 34, pp. 134–35 (emphasis added).  Although Bloch states that he conducted an independent investigation of the Couls motorcycle, he does not cite to his own findings in either his report or his deposition.  As to his conclusion that the heated handlebar grips were turned on at the time of the accident, Bloch states

> In this crash, many components are bent, broken, shifted, changed, altered, so there – there is no absolute [evidence that the heated handlebar grips were on] – circumstantially, one could say yes, from – from eyewitnesses, from his fellow riders, from the weather, everything taken into account, that is extremely more than likely than not that he had turned on the heated handgrips.
>
> …
>
> Well, I believe the overwhelming . . . circumstantial and more likely than not type of information that I processed [shows] that they – the heated handgrips were on . . . . The weather, the observation by the Picketts, the performance of the bike itself, the knowledge from Triumph that this can lead to loss of control, . . . and [the] crash . . . .  There's probably 10 or more factors that support my judgment that the heated handgrips had been on [at the time of the accident].

ECF No. 275-3 at 28, p. 70:6–12; id. at 33, p. 90:11–23.

Bloch did not utilize any scientific, technical or specialized knowledge in making his inferences.[8]  Bloch has difficulty explaining his methodology because his

---

[8]      The Court rejects the Plaintiffs' argument that Bloch's inference that the heated handgrips were activated at the time of the accident is "an assumption of fact that he is allowed to make as an expert witness" and "a question of fact for the jury [to] decide."  ECF No. 176-3 at 19.  In a recent decision, the Fourth Circuit rejected the argument that "relevance and reliability impact[] only the weight of the [expert's] testimony, not [its] admissibility."  Sardis, 2021 WL 3699753, at *6.  The court noted there is such a "pervasive problem" of district courts not performing their gatekeeping duties that the Advisory Committee on Evidence Rules approved including the following language in the advisory committee notes to Rule 702:

> [U]nfortunately many courts have held that the critical questions of the sufficiency of an

"methodology, largely, [is] an analysis internal to Mr. Bloch's brain."   Rupert, 2015 WL 757402, at *5 (quotation marks omitted).   The Court notes that in making his inference that the heated handlebar grips were turned on at the time of the accident, Bloch assumes that the Couls motorcycle had the sticky throttle defect, and there was an UIA before the accident.   When asked whether his inspection of the Couls motorcycle showed any evidence that the heated handlebar grips were turned on, Bloch conceded that it did not. ECF No. 275-3 at 28, p. 69:17–22.   However, he believed the heated handlebar grips were turned on because eyewitnesses to the accident observed signs of inadvertent acceleration:

> I don't know that information [of whether the heated handlebar grips were turned on] presently.  But in my judgment, the handgrips were turned on. . . . The totality of what the Picketts – Mr. and Mrs. Pickett, what they witnessed about John Couls, his hands on the bike, what was happening to the front wheel of the bike as they were observing it.  And they were observing the speed of his vehicle relative to theirs, his maneuvers relative to theirs, the rumble strips on the shoulder of the road to the northbound side of the heading-east lane.  **From all those observations and, you know, confronted with this inadvertent acceleration** and where the front brake hand lever is forward of the front handlebar, as John would be feathering or manipulating – kind of like you're pumping the breaks – [of] your vehicle.

Id. at 28, pp. 70:23–81:18.   This inference, which assumes a conclusion that was not derived from a scientific or another valid method and lacks an evidentiary foundation, is precisely the type of inference the Daubert inquiry is meant to exclude from trial.   See Bellville, 919 F.3d at 229–30 (excluding expert's opinion because his testing "rested on questionable assumptions that lacked evidentiary foundations").

---

expert's basis [for his testimony], and the application of the expert's methodology, are generally questions of weight and not admissibility. These rulings are an incorrect application of Rules 702 and 104(a) and are rejected by this amendment.

Id. at *8 (citing Advisory Comm. on Evid. Rules, Agenda for Committee Meeting 105, 107 (Apr. 30, 2021)). Thus, in order for the Court to perform its "gatekeeping" duties under Daubert, it must make the finding that Bloch's assumption is reliable—not the jury.

Bloch does not cite any physical evidence, test data, or relevant literature to support his conclusions, but instead, relies on TML's findings—which pertain to only some T120 motorcycles—and circumstantial evidence such as the weather and testimony that the decedent enjoyed using the heated handlebars.   See Fatery, No. H-17-358 at 1 (finding Bloch's methodology unreliable because he based his opinions on studies that were not relevant to the motorcycle accident in the case).   Bloch's inferences are not based on facts, but rather, they are informed by his "background and intuition."   Rupert, 2015 WL 757402, at *7.   Such an analysis, which cannot be tested, standardized or published, is not reliable within the Daubert framework.   Id.; see Oddi v. Ford Motor Co., 234 F.3d 136, 158 (3d Cir. 2000) (holding the expert "conducted no tests and failed to attempt to calculate the forces on Oddi or the truck during this accident, he used little, if any, methodology beyond his own intuition.   There is nothing here to submit to peer review, and it is impossible to ascertain any rate of error for [the expert's] assumptions about the forces that cause[d] Oddi's horrific injuries.").

The Defendants argue that Bloch's first opinion is also unreliable because Bloch fails to account for alternative theories of causation, such as the severe wind conditions, rider error, or a medical event.   ECF No. 160-1 at 11.   The Court agrees.   In determining the reliability of expert opinion under Rule 702, it is significant whether "an expert has adequately accounted for obvious alternative explanations."   Fed. R. Evid. 702, advisory committee's note (2000).   Here, while the evidence shows the decedent was a competent rider and there was no medical event leading to the accident, Bloch's report did not satisfactorily establish that but for the Couls motorcycle's alleged sticky throttle defect, the accident would not have happened.   See Belville, 919 F.3d at 228 (stating, "because

many factors unrelated to an [electronic throttle control] system may cause [unintended accelerations], the Plaintiffs' mere allegations that they experienced UIAs were not evidence of a defect") (citing <u>Johnson v. Ford Motor Co.</u>, 310 F. Supp. 3d 699 (S.D. W. Va. 2018)).   Rather than reviewing the evidence to see if it demonstrated the accident was caused by the sticky throttle defect, Bloch assumed, without support, that the sticky throttle defect caused a UIA, and proceeded from that starting point.  In <u>Carter v. Carlson</u>, the court excluded Bloch's opinions in an automobile design liability case because he began his analysis under the assumption that the accident occurred, stating "[a]n expert witness does not assist the jury in determining whether an event occurred if he starts his analysis using an assumption that the event occurred."  Memorandum and Order at 12, <u>Carter v. Carlson</u>, No. 03-1156 (D. Kan. Dec. 22, 2005).  This Court finds that Bloch's first opinion must be excluded for the very same reason.

Because Bloch did not test his theories, base his opinions on reliable inferences, or adequately account for alternative theories of causation, the Court does not find that his methodology in reaching his first opinion is reliable under <u>Daubert</u>.   Accordingly, Bloch's first opinion must be excluded.

### 2. Bloch's Second, Third and Fourth Opinions – TML Failed to Adequately Test T120 Motorcycles; TML Was Noticed in June 2016 of the Sticky Throttle Defect; and TML May Have Violated NHTSA Reporting Requirements

Bloch's second, third and fourth opinions are that TML failed to adequately test the T120 motorcycles for any adverse heated handlebar grips effects; TML was noticed of the sticky throttle defect beginning in June 2016 but did not investigate the defect until October 2016; and TML may have violated the NHTSA reporting requirements by not

promptly reporting the defect, respectively.  The Court finds that all three of these opinions are insufficiently reliable under <u>Daubert</u>.

There is little to no data in Bloch's report that supports these opinions.  For example, while Bloch opines that TML failed to adequately test the heated handlebar grips during the T120 motorcycle's development and prototype testing phases, Bloch fails to identify any design or development standard to which TML allegedly failed to adhere.  <u>See</u> ECF No. 275-4 at 15.  He suggests that TML "violated the well-established motor vehicle industry principles of conducting a rigorous Failure Modes and Effects Analysis ("FMEA"), but he does not explain how [<u>id.</u>], and, as the Defendant's liability expert points out, there is no FMEA standard.  <u>See</u> ECF No. 167-2 at 26.  Bloch also opines that TML's alleged delay in reporting the sticky throttle defect to the NHTSA "may" have violated the NHTSA's reporting requirements, but he does not state what requirements or explain how he arrived at that conclusion.  ECF No. 275-4 at 15.  Without any evidence to support his conclusions, Bloch's opinions are unreliable and do not assist the trier of fact.  <u>See</u> <u>Fatery</u>, No. H-17-358 at 1 ("Bloch has many opinions but little data supporting those opinions. Because none of Bloch's opinions are reliable, he may not testify.").

Bloch's third and fourth opinions are also unreliable because they were not derived by using scientific or valid methods.  Bloch opines that the timing of TML's reporting to the NHTSA "may be a violation of the NHTSA regulations that require prompt reporting of . . . safety issues."  ECF No. 275-4 at 15.  He bases his opinions on the following warranty claims for T120 motorcycles: an Australian warranty claim received on June 18, 2016, an American warranty claim received on July 28, 2016, and a Japanese warranty claim received on September 13, 2016.  ECF No. 275-4 at 5.  However, those dates

represent when the local dealership, and not TML, became aware of the complaint.  As Bloch does not provide any further explanation for how he reached his conclusion, his opinion that TML "may have" delayed reporting the sticky throttle defect to the NHTSA does not assist the trier of fact.  Thus, the Court finds that it is insufficiently reliable and must be excluded from trial.  See Wells, 497 F. Supp. 3d at 99 (stating, "Expert opinions that are bare conclusions without reliable support must be excluded.") (quotation marks and alterations omitted).

Because Bloch's second, third and fourth opinions are bare conclusions without reliable support, they are insufficiently reliable under Daubert.  Accordingly, they must also be excluded.

## III.   MOTION FOR SUMMARY JUDGMENT

The Defendants aver that without Bloch's testimony and report, the Plaintiffs cannot establish the requisite elements of their products liability claims under West Virginia law.  ECF No. 268.  "Under West Virginia law, 'product liability actions may be premised on three independent theories—strict liability, negligence and warranty."  Syl. pt. 1, in part, McNair v. Johnson & Johnson, 241 W. Va. 26, 28, 818 S.E.2d 852, 859 (2018).  While "[e]ach theory contains different elements which plaintiffs must prove in order to recover," the West Virginia Supreme Court has defined a products liability action as one that typically

> alleges that a manufacturer alleges that a manufacturer designed and/or produced a product and put the product into the stream of commerce, and that the product was unsafe or flawed in such a way so as to give rise to the liability of the manufacturer for injuries resulting from the use of the product. The alleged unsafefulness or flaw(s) may be as a result of the actual design or construction of the product, or in the adequacy of warnings provided to the user(s) of the product.

<u>Donegan v. Enerco Grp., Inc.</u>, No. 3:18-CV-34, 2019 WL 7834758, at *1 (N.D.W. Va. Apr. 9, 2019) (citing <u>McNair</u>, 241 W. Va. at 28, 818 S.E.2d at 859).

Here, the Plaintiffs bring claims for strict liability, breach of express warranty, and implied warranty.[9]  ECF No. 34.  To establish a prima facie strict liability claim, a plaintiff must show that the product was defective in the sense that it was not reasonably safe for its intended use, and the defect proximately caused the plaintiff's injury.  <u>See</u> <u>Morningstar v. Black & Decker Mfg. Co.</u>, 162 W. Va. 857, 888, 253 S.E.2d 666, 682 (1979).  The plaintiff bears the burden of proving the defect.  <u>Id.</u>  To establish a prima facie breach of express warranty claim, the plaintiff must "show the existence of an express warranty, breach of the express warranty, and damages proximately caused by the breach."  <u>Tyree v. Boston Sci. Corp.</u>, No. 2:12-cv-8633, 2014 WL 5359008, at *5 (S.D.W. Va. Oct. 20, 2014); <u>see</u> W. Va. Code § 46-2-313 (2012).  Here, the Plaintiffs allege that the Defendants are liable for breach of express warranty because the Couls motorcycle was defective.  <u>See</u> ECF No. 34 at 12–13.

---

[9]     The Court finds that the Plaintiffs have failed to state a claim for breach of implied warranty.  To support their claims for breach of implied warranty of merchantability, the Plaintiffs allege that (1) at the time of the purchase, the Defendants knew or had reason to know that the decedent intended to use the motorcycle for the purposes he did in fact use it for, (2) the Defendants knew or had reason to know that the decedent "was relying on the Defendants' skill and judgment in manufacturing and selling such motorcycles," (3) the decedent "justifiably relied on the Defendants' skill and judgment" when he selected the Couls motorcycle, and (4) he was injured by the motorcycle because it was not suitable for its intended purposes.  ECF No. 34 at 13–14.  Thus, it appears that the Plaintiffs are bringing claims for breach of implied warranty of fitness for a particular purpose, which requires a plaintiff to allege that he relied on the seller's skill or judgment in selecting the goods.  <u>See</u> W. Va. Code § 46-2-315.

However, to prevail on a claim of breach of implied warranty of fitness for a particular purpose, the plaintiff must allege a "particular purpose that is <u>different</u> from the ordinary purpose" of the product.  <u>See</u> <u>Tyree v. Boston Sci. Corp.</u>, No. 2:12-cv-8633, 2014 WL 5359008, at *7 (S.D.W. Va. Oct. 20, 2014).  Here, the Plaintiffs have not alleged that the decedent used the Couls motorcycle for a different purpose than its intended purpose.  Accordingly, the Court finds that the Plaintiffs failed to state a claim for breach of implied warranty of merchantability or fitness for a particular purpose, and dismisses Counts 11 & 12.

Accordingly, in order to prevail on any one of their products liability claims, the Plaintiffs must establish that the Couls motorcycle had the sticky throttle defect and that the defect caused the accident.  The Plaintiffs offer as evidence of the defect the other warranty claims, TML's investigation and findings, and TML's recall notice.  However, none of these documents establish that the Couls motorcycle had the defect.  The Plaintiffs' only evidence that pertained to the Couls motorcycle specifically was Bloch's unqualified testimony and report.  Importantly, "a plaintiff may not prevail in a products liability case by relying on the opinion of an expert unsupported by any evidence such as test data or relevant literature in the field."  Oglesby, 190 F.3d at 249 (citation omitted).  Absent qualified expert testimony, there is no genuine issue of material fact that the Couls motorcycle had the sticky throttle defect or that the sticky throttle defect caused the accident because there is no evidence of the defect on this specific motorcycle.  Thus, the Plaintiffs have failed to establish their prima facie products liability claims, and the Defendants are entitled to summary judgment as a matter of law.

## IV.    CONCLUSION

For the reasons stated above, the Court finds that Bloch's opinion is inadmissible under Rule 702.  Accordingly, the Defendants' Motion to Exclude Expert Testimony of Byron Bloch is **GRANTED**.  ECF No. 160.

The Court further **GRANTS** the Defendants' Motion for Summary Judgment because absent qualified expert testimony, the Plaintiffs cannot establish a prima facie products liability claim, and the Defendants are entitled to judgment as a matter of law. ECF No. 268.  The Court **DIRECTS** the Clerk to enter a separate judgment in favor of the Defendants pursuant to Federal Rule of Civil Procedure 58.

Accordingly, the Court **DISMISSES** this action **WITH PREJUDICE**.   The Court **ORDERS** that this case be **STRICKEN** from the Court's active docket.   The Clerk is further **DIRECTED** to **TERMINATE** all pending motions as **MOOT**.[10]

The Clerk of Court is **DIRECTED** to transmit copies of this Order to all counsel of record herein.

**DATED:** September 22, 2021

GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE

---

[10] Specifically, the Clerk is **DIRECTED** to terminate the following pending motions: Plaintiffs' Motion for Partial Summary Judgment [ECF Nos. 267 & 270], Defendants' Motion for Judicial Notice [ECF No. 210], Defendants' Motions in Limine [ECF Nos. 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 202, 203, 204 & 219], and Plaintiffs' Motions in Limine [ECF Nos. 214, 215, 216, 217 & 218].